**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE SADIA S.A. SECURITIES LITIGATION | Case No. 1:08-CV-09528 (SAS) |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................2

III.    ARGUMENT ......................................................................................................4

   A.    THE REQUIREMENTS OF RULE 23 ...........................................................4

   B.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a) .............6

      1.    The Proposed Class is so Numerous that Joinder of all Members is Impracticable ....6

      2.    There are Questions of Law or Fact Common to the Class.......................................7

      3.    Plaintiffs' Claims are Typical of the Claims of the Class .........................................9

      4.    Plaintiffs will Fairly and Adequately Protect the Interests of the Class....................11

      5.    The Class is Sufficiently Ascertainable..................................................................12

   C.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(3) .......12

      1.    Common Questions of Law or Fact Predominate....................................................13

         i.    Transaction Causation ........................................................................................14

            a.    The Fraud on the Market Presumption...........................................................14

            b.    The Affiliated Ute Presumption .....................................................................16

         ii.   Loss Causation ...................................................................................................16

         iii.  Damages ............................................................................................................17

      2.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy..........................................................................18

   D.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL 20

IV.     CONCLUSION ..................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens v. United States*,
  406 U.S. 128 (1972) ................................................................................................16

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................................................11, 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ....................................................................................14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ....................................................................................11

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ...............................................................................................15

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ..........................................................................15

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007) .....................................................................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .......................................................................................6

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ..........................................................................6, 7

*DuPont v. Brady*,
  828 F.2d 75 (2d Cir. 1987) .....................................................................................16

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ...............................................................................10

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
  343 F.3d 189 (2d Cir. 2003) ...................................................................................14

*Fears v. Wilhelmina Model Agency, Inc.*,
  No. 02-cv-4911 (HB), 2003 WL 21659373 (S.D.N.Y. Jul. 15, 2003)...................18

*Fogarazzo v. Lehman Bros., Inc.*,  (*Fogarazzo I*),
  232 F.R.D. 176 (S.D.N.Y. 2005) ..............................................................8, 9, 12, 16

*Fogarazzo v. Lehman Bros., Inc.*, (*Fogarazzo II*),
No. 03-cv-5194 (SAS), 2009 WL 2390244 (S.D.N.Y. Aug. 4, 2009)..............................passim

*Forbush v. J.C. Penney Co.*,
994 F.2d 1101 (5th Cir. 1993) ......................................................................................9

*General Telephone Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) ......................................................................................................9

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ..........................................................................................15

*Hnot v. Willis Group Holdings Ltd.*,
241 F.R.D. 204 (S.D.N.Y. 2007) ................................................................................17

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ................................................................................17

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95-cv-3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) .........................5, 8, 13

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) .....................................................................................6

*In re Energy Sys. Equip. Leasing Sec. Litig.*,
642 F. Supp. 718 (E.D.N.Y. 1986)..............................................................................10

*In re Frontier Ins. Group, Inc. Sec. Litig.*,
172 F.R.D. 31 (E.D.N.Y. 1997)....................................................................................7

*In re Globalstar Sec. Litig.*,
No. 01-cv-1748 (PKC), 2004 WL 2754674 (S.D.N.Y. 2004)....................................6

*In re Indep. Energy Holdings PLC Sec. Litig.*,
210 F.R.D. 476 (S.D.N.Y. 2002) ............................................................................8, 13

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) .......................................................................................4, 5

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65, 71 (S.D.N.Y. 2004) ........................................................................6, 15

*In re Interpublic Sec. Litig.*,
No. 02-cv-6527 (DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) ...................10

iv

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ..............................................................................11

*In re Omnicom Group, Inc. Sec. Litig.*,
   No. 02-cv-4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007)...................................13

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ......................................................................8, 13

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005)....................................................................15

*In re Parmalat Sec. Litig.*,
   No. 04-md-1653 (LAK), 2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008)...........................14, 16

*In re Salomon Analyst Metromedia Litig.*,
   544 F.3d 474 (2d Cir. 2008) ..............................................................................15

*In re SCOR Holding (Switz.) AG Litig.*,
   537 F. Supp. 2d 556 (S.D.N.Y. 2008)....................................................................15

*In re Towers Fin. Corp. Noteholders Litig.*,
   177 F.R.D. 167 (S.D.N.Y. 1997) ..........................................................................13

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2005) ......................................................................6, 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..........................................................6, 10, 14, 16

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................6, 9, 17

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ..............................................................................17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ..........................................................................5, 10

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008) ................................................................................4

*Wagner v. Barrick Gold Corp.*,
    251 F.R.D. 112 (S.D.N.Y. 2008) ................................................................................. 18, 19

**Rules**

Federal Rule of Civil Procedure 23(a) ........................................................................... 4, 6, 9, 11

Federal Rule of Civil Procedure 23(b)(3)................................................................... 5, 12, 18, 19

Federal Rule of Civil Procedure 23(g) ..................................................................................... 20

## I.     <u>INTRODUCTION</u>

Lead Plaintiffs Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Alan Hyman, Phil Carey, Steve Geist and Peter Schicker ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for an Order (i) certifying this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of a class defined as: all persons and entities who purchased or otherwise acquired Sadia, S.A. ("Sadia" or the "Company") American Depository Receipts ("ADRs") from April 30, 2008 to September 26, 2008, inclusive, and who were damaged thereby (the "Class"); (ii) appointing them as Class Representatives; and (iii) approving Plaintiffs' selection of Saxena White P.A. ("Saxena White") and Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as Class Counsel.

As  demonstrated below, Plaintiffs' claims satisfy each of the four requirements of Rule 23(a):  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. Additionally, Plaintiffs' claims satisfy the implied requirement of ascertainability.  This action also satisfies the two requirements for class certification under Rule 23(b)(3):  (i) predominance of common questions of law or fact; and (ii) superiority as a method of adjudication. Accordingly, the Court should enter an Order granting Plaintiffs' motion.[1]

---

[1] Defendants Gilberto Tomazoni, Welson Teixeira, Jr., Adrino Lima Ferreira, Walter Fontana Filho, Eduardo Fontana d'Avila (the "Individual Defendants") have yet to be served with initial process due to difficulties in doing so under Brazilian law.  Accordingly, Plaintiffs move for class certification herewith against Sadia S.A. only.  In the event the instant motion is granted, Plaintiffs reserve the right to move the Court to modify the Class to include claims against the Individual Defendants once service upon them is effected.

1

## II.    STATEMENT OF FACTS

Beginning in 2004, Sadia implemented financial policies to purportedly control the overall exposure and risk of its financial assets and liabilities to the fluctuations in the value of foreign currencies being used by its trading partners, and to keep the Company's executives apprised of any on-going developments in or deviations from the stated goals of the policies. ¶¶26, 34-36.[2]  Specifically, the Company's financial department incorporated a Hedging and Investment Policy, which was reviewed and approved by the Financial Committee.  ¶27.  This policy explicitly prohibited speculative trading in the hedging instruments, and obligated the Company to diversify its counterparties.  *Id.*  In addition, Sadia repeatedly assured its investors prior to and throughout the Class Period that it "does not use [currency derivative] contracts for trading on speculative purposes."  ¶50.  Sadia had also adopted Bovespa's[3] Level One of corporate governance—a certification that the Company was committed to transparency in its business operations and the fair disclosure of information concerning its financial condition. ¶26.

Sadia repeatedly stated in its Class Period filings that its Board of Directors and the Board's committees closely and "permanently" monitored the Company's financial positions, risks and potential exposure from its financial instruments, and that these individuals "are responsible for defining management's strategy for administering these risks, determining the limits for positions, exposure and authority for decision making."  ¶36.  To that end, the Company routinely held meetings and provided reports to senior management concerning the

[2] All "¶__" references are to Plaintiffs' Consolidated Amended Complaint (hereinafter, "Complaint"), filed on March 16, 2009.  Dkt. #25.
[3] Bovespa is the Sao-Paolo, Brazil-based stock exchange.  In 2000, Bovespa established Levels of Corporate Governance Practice.  Companies qualified as Level One are committed to enacting information disclosure improvements and policies.

potential risks and current information regarding Sadia's hedging exposure, including, among other items, daily "currency books" and "out-of-policy warnings" that detailed the Company's hedging exposure and promptly alerted management as to any deviations from Sadia's stated "non-speculative" hedging policy. ¶¶39-42.

In contrast to its promise of financial transparency and sound corporate governance, Sadia engaged in an extremely high risk bet with shareholders' money through an intentional currency hedging speculation scheme. ¶28. Currency hedging is used by exporting companies, such as Sadia, to reduce the risks that the currency paid to them for future sales (in this case, U.S. dollars) does not decline in value vis-à-vis their native currency (in this case, the Brazilian real). *Id.*

In express violation of its stated policy, Sadia entered into currency contract positions that were not designed as insurance against potential lost profits related to sales affected by currency fluctuations, but were instead outright speculation. ¶31. When Sadia and the Individual Defendants (collectively "Defendants") bet wrongly and the dollar appreciated in value against the real instead of continuing to depreciate, the risky strategies that Defendants had secretly enacted during the Class Period jeopardized the entire Company. ¶32. Sadia's executives and directors were well aware of this risk, yet they continued to make currency wagers in an undisclosed attempt to obtain additional revenues and greater compensation. ¶¶36-45.

During the Class Period, Defendants made numerous material misrepresentations to Sadia's shareholders and the general public that the Company's exposure to currency hedges and risks was effectively managed and permanently monitored, and that Sadia's risk management strategy was traditional and conservative. ¶¶46-57. The falsity of these statements became

3

apparent when Sadia filed a Form 6-K with the SEC on September 25, 2008. On this date, Sadia announced that it would take a loss of approximately R$760 million ($410 million) related to the Company's investments in currency contracts hedged against the U.S. dollar. ¶58. This loss dwarfed the value at risk figures that Sadia had repeatedly disclosed to the public during the Class Period, and contradicted Defendants' statements that the Company's hedging policy prohibited speculation and was implemented to protect against exchange rate fluctuations. ¶59.

As a result of these staggering losses, credit ratings agencies downgraded Sadia, its stock plummeted to its lowest level in 14 years, the Chairman and Vice Chairman resigned, and the CFO was fired. Because Sadia placed such an enormous amount of money at stake, any substantial depreciation in the value of the Brazilian real relative to the U.S. dollar would, and in fact did, jeopardize the financial viability of the entire Company. ¶32.

## III.  ARGUMENT

### A.  THE REQUIREMENTS OF RULE 23

Federal Rule of Civil Procedure 23 governs class certification. A party seeking class certification must first show that the class satisfies the following four requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A district judge must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). Plaintiffs must satisfy the requirements of Rule 23 by a mere preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). While the court's obligation to

make such determinations is not lessened by an overlap between a Rule 23 requirement and a merits issue, a "district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *IPO*, 471 F.3d at 41.  Accordingly, a district judge has "ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits." *Id.*  Furthermore, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Fogarazzo v. Lehman Bros., Inc.*, (*Fogarazzo II*), No. 03-cv-5194 (SAS), 2009 WL 2390244, at *1 (S.D.N.Y. Aug. 4, 2009) (J. Scheindlin) (*quoting Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997)).

Once a court determines that the Rule 23(a) requirements have been met, it may grant class certification if it finds that plaintiffs satisfy one of the three subsections of Rule 23(b). Here, Plaintiffs seek class certification pursuant to Rule 23(b)(3), which requires that "the court finds the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Second Circuit has expressed "a strong preference" for the use of the class actions to resolve securities law claims.  *In re Arakis Energy Corp. Sec. Litig.*, No. 95-cv-3431 (ARR), 1999 WL 1021819, at *4 (E.D.N.Y. Apr. 27, 1999). As noted by Judge Sweet:

> Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws.  It is well recognized that private enforcement of these laws is a necessary supplement to government regulation.  Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.

*In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) (internal citations omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 71 (S.D.N.Y. 2004) (J. Scheindlin) ("[C]lass-wide adjudication under Rule 23 of the Federal Rules of Civil Procedure is particularly well-suited to securities fraud cases.").[4]

### B.    PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a)

As demonstrated below, Plaintiffs meet Rule 23(a)'s four requirements for class certification.

### 1.    The Proposed Class is so Numerous that Joinder of all Members is Impracticable

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo II*, 2009 WL 2390244, at *1 (*citing Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007)). "Sufficient numerosity can be presumed at a level of forty members or more." *Id.* (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Plaintiffs "may rely on reasonable inferences drawn from the available facts in order to estimate the size of the class," and a court may "may make common sense assumptions to support a finding of numerosity." *Blech*, 187 F.R.D. at 103. Further, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied

---

[4] Courts in the Southern District of New York have routinely certified securities cases as class actions. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194 (SAS), 2009 WL 2390244 (S.D.N.Y. Aug. 4, 2009) (J. Scheindlin); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220 (S.D.N.Y. 2006); *In re Globalstar Sec. Litig.*, No. 01-cv-1748 (PKC), 2004 WL 2754674 (S.D.N.Y. 2004); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003); *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000); *In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999).

by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

Throughout the Class Period, Sadia ADRs were actively traded on the New York Stock Exchange, an open, well-developed and efficient market. ¶¶87, 98. Although Plaintiffs have not at this time ascertained the precise number of potential Class members, they believe that there are thousands of potential Class members dispersed throughout the United States.[5] ¶87. As of March 12, 2008, Sadia had over 29.9 million ADRs outstanding. *Id.* Therefore, the numerosity of the Class is evident. *See, e.g., Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000) (finding numerosity and certifying class where corporation had 22.5 million shares outstanding held by approximately 582 record holders); *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (finding numerosity and certifying class where corporation had 13 million shares of common stock outstanding). Furthermore, "as this is a securities fraud case, the plaintiff class will certainly number more than forty. As such, numerosity is presumed." *Fogarazzo II*, 2009 WL 2390244, at *6. Plaintiffs readily satisfy the numerosity requirement here.

### 2.     There are Questions of Law or Fact Common to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The commonality requirement "has been applied permissively in securities fraud litigation." *Vivendi*, 242 F.R.D. at 84. The requirement "does not mandate that all class members make identical claims and arguments." *Fogarazzo II*, 2009 WL 2390244, at *2. Furthermore, "[w]hen common

---

[5] As more fully discussed in section III(B)(5) below, the precise number and identity of Class members will be ascertained from Sadia's books and records, as well as the records maintained by the applicable transfer agents, during discovery.

questions do predominate, differences among the questions raised by individual members will not defeat commonality." *Id.*

Courts have consistently recognized that securities fraud cases in which plaintiffs allege misrepresentations and omissions regularly present common issues of law and fact. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, (*Fogarazzo I*) 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (J. Scheindlin) (*citing Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)) ("In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (J. Scheindlin) (same); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."); *Arakis*, 1999 WL 1021819, at *5 ("In this case, where all the class claims arise out of publicly announced, allegedly false statements, common questions of law and fact are virtually assured."). The Complaint details a course of conduct whereby Defendants made material misrepresentations and omissions to the public regarding Sadia's currency hedging policy and failed to disclose the true extent of the Company's currency hedges. Common questions of law and fact at issue include:

> (a)    whether documents, press releases, and other statements disseminated to the investing public and Sadia's shareholders during the Class Period misrepresented material facts about the business, finances, financial conditions, and future prospects of Sadia;

(b)      whether statements made by Defendants to the investing public during the Class period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance, and future prospects of Sadia;

(c)      whether the market price of Sadia ADRs during the Class Period was artificially inflated due to Defendants' material misrepresentations and omissions, and failure to correct those material misrepresentations and omissions;

(d)      whether Defendants participated in and pursued a common course of conduct;

(e)      whether Defendants' acts violated the federal securities laws; and

(f)      whether the Class has sustained damages, and the amount of those damages.

¶90.   Accordingly, Plaintiffs satisfy the commonality requirement.

### 3.      Plaintiffs' Claims are Typical of the Claims of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[6]  The typicality requirement "is not demanding" (*Fogarazzo I*, 232 F.R.D. at 180 (*quoting Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993))), and "does not require that the situations of the named representatives and the class members be identical." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008). Rather,

> Typicality refers to the nature of the claim of the class representative, and not to specific facts from which the claim rose or relief is sought.  The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and

---

[6] The Supreme Court has observed that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

> whether other class members have been injured by the same course of conduct. Factual differences will not defeat class certification where the various claims arise from the same legal theory. Thus, a difference in the amount of damage, date, size or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions.

*In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 750 (E.D.N.Y. 1986) (*quoting Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)). The typicality requirement "may be satisfied where 'injuries derive from a unitary course of conduct by a single system.'" *Fogarazzo II*, 2009 WL 2390244, at *2 (*citing Marisol A.*, 126 F.3d at 377).

Plaintiffs' claims against Defendants are typical of the claims of other Class members because their injuries derive from a unitary course of conduct—Defendants' material misrepresentations and omissions regarding Sadia's currency hedging policy and the extent of the Company's currency hedges. Moreover, the damages sustained by Plaintiffs and other members of the Class arise from the same course of misconduct. *See supra* at III(B)(2). Accordingly, Plaintiffs satisfy the typicality requirement. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met.. . ."); *In re Interpublic Sec. Litig.*, No. 02-cv-6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) ("Plaintiffs allege that the defendants distributed materially false and misleading information that artificially inflated the price of [the defendant company's] common stock throughout the class period. The defendants' alleged course of conduct is central to the claims of [the two proposed] classes and its named representatives.").[7]

---

[7] Plaintiffs' certifications demonstrating their Sadia S.A. ADR purchases during the proposed Class Period are attached as Exhibits B-F to the Declaration of Christopher S. Jones  filed in

### 4.    Plaintiffs will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement necessitates a two-part inquiry: "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Fogarazzo II*, 2009 WL 2390244, at *2 (*quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

First, Plaintiffs have no interests antagonistic to the interest of other Class members.  This analysis focuses on "whether the proposed class representatives possess the same interest and suffer the same injury as the class members." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 73 (S.D.N.Y. 2009) (*quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997)). Plaintiffs, like other Class members, have been injured by Defendants' material misrepresentations and omissions regarding Sadia's currency hedging policy and the extent of the Company's currency hedges.  There are no unique defenses that apply to Plaintiffs.  Plaintiffs have taken steps to secure competent counsel for the Class and to remain informed about the status of the litigation.  Accordingly, Plaintiffs will protect and advance the interests of the Class members.

Second, Plaintiffs have retained counsel who are qualified, experienced, and able to conduct the litigation.  *See* Jones Decl., Exs. H and I.  As their actions in this case and others demonstrate, Plaintiffs' counsel have committed, and are willing to commit, considerable resources to the prosecution of this action, and have fully, fairly, and more than adequately

---

Support of the Motion of the Sadia Investor Group for Consolidation, Appointment of Lead Plaintiff and Approval of its Selection of Co-Lead Counsel and Liaison Counsel (the "Jones Decl.") (Dkt. #9) and are respectfully incorporated by reference, here.

11

represented the interests of the Class in this action to date. Accordingly, Plaintiffs easily satisfy the adequacy requirement.

### 5.      The Class is Sufficiently Ascertainable

Although not explicitly recognized by Rule 23(a), courts have implied a requirement that the Class be ascertainable *Fogarazzo I*, 232 F.R.D. at 181. "An identifiable class exists if its members can be ascertained by reference to objective criteria. Class members need not be ascertained prior to certification, but the exact membership of the class must be ascertainable at some point in the case." *Id.*

Here, the precise identity of Class members—those who purchased Sadia ADRs during the Class Period—can be readily ascertained from Sadia's books and records, as well as the records maintained by the applicable transfer agents. Thus, Plaintiffs satisfy the ascertainability requirement. *See Fogarazzo II*, 2009 WL 2390244, at \*7 ("I am further convinced that the class is ascertainable using objective criteria. The class includes all purchasers of [defendant's] common stock within a certain time period. Plaintiffs note that putative class members can be readily identified from [defendant's] books and records, as well as records maintained by the applicable transfer agents.").

### C.      PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(b)(3)

Once Plaintiffs demonstrate that the proposed Class satisfies the requirements of Rule 23(a), they must establish that the action is maintainable as defined by Rule 23(b). As demonstrated below, this action is maintainable under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

12

### 1.     Common Questions of Law or Fact Predominate

In determining whether common questions predominate over individual questions, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2005); *see also Indep. Energy Holdings*, 210 F.R.D. at 486 (same).  Thus, "[p]laintiffs only need to show that issues in the class action subject to generalized proof . . . predominate over those issues that are subject to individualized proof." *In re Omnicom Group, Inc. Sec. Litig.*, No. 02-cv-4483 (RCC), 2007 WL 1280640, at *7 (S.D.N.Y. Apr. 30, 2007).  Further, predominance "does not require a plaintiff to show that there are no individual issues." *NYSE Specialists*, 260 F.R.D. at 75.

Courts have frequently recognized that common questions of law or fact will predominate in securities fraud actions that allege materially false representations or omissions were made to large groups of investors.  *See, e.g., Oxford*, 191 F.R.D. at 377 ("[A]ll class members' claims arise from a common nucleus of facts:  Defendants' alleged concealment and/or misrepresentations of material facts affecting the market price of the stock. . . ."); *Arakis*, 1999 WL 1021819, at *10 ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.") (*citing In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997)).  Even the Supreme Court has observed that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud. . . ." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Complaint alleges that all Defendants violated Section 10(b) and Rule 10b-5, and that the Individual Defendants violated Section 20(a).  ¶¶100-114.  "The form of reliance required to state a Section 10(b) claim is of particular relevance with respect to defendants'

13

arguments in opposition to class certification." *WorldCom*, 219 F.R.D. at 291. To state a claim for securities fraud, "a plaintiff must plead both transaction causation (also known as reliance) and loss causation." *Fogarazzo II*, 2009 WL 2390244, at *4.

Along with this memorandum of law, Plaintiffs are filing the Expert Report of Dr. Marc Vellrath (the "Vellrath Report"), on the issues of transaction causation, loss causation, and damages.

### i.        *Transaction Causation*

Transaction causation or reliance refers to "the causal link between the defendant's misconduct and the plaintiff's decision to buy or sell securities." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). To establish transaction causation, a plaintiff must show that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Fogarazzo II*, 2009 WL 2390244, at *4. (*quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007)). Plaintiffs are entitled to a presumption of reliance on a class-wide basis based on two theories:  the fraud on the market presumption, and the *Affiliated Ute* presumption. *See In re Parmalat Sec. Litig.*, No. 04-md-1653 (LAK), 2008 WL 3895539, at *8 (S.D.N.Y. Aug. 21, 2008).

### a.        *The Fraud on the Market Presumption*

Plaintiffs are first entitled to rely on the fraud on the market presumption. The fraud on the market presumption developed as a practical response to the difficulties of proving direct reliance in the context of modern securities markets. *WorldCom*, 219 F.R.D. at 291. It is based on the hypothesis that:

> [I]n an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its

14

> business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic Inc. v. Levinson*, 485 U.S. 224, 214-42 (1988). As explained by the Second Circuit, the fraud on the market doctrine "creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 77 (2d Cir. 2004).

As long as plaintiffs "can show that the alleged misrepresentation was material and publicly transmitted into a well-developed market, then reliance will be presumed." *Fogarazzo II*, 2009 WL 2390244, at \*5 (*quoting In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 483 (2d Cir. 2008)). When determining whether the market for a security is efficient, courts in this District often employ the factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).[8] These factors are: (1) a large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 registration statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. *Id.* at 1286-87. As set forth and detailed in the Vellrath Report, the market for Sadia ADRs was efficient, and Defendants' misrepresentations materially affected the price of Sadia's ADRs in the open market.

---

[8] *See, e.g., In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556 (S.D.N.Y. 2008); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 303 n.162 (S.D.N.Y. 2005); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. at 107, n.323 (S.D.N.Y. 2004).

### b.        The **Affiliated Ute** *Presumption*

Plaintiffs are also entitled to rely on the presumption set forth in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).  Under the *Affiliated Ute* presumption, "reliance is presumed when the claim rests on the omission of a material fact."  *Fogarazzo I*, 232 F.R.D. at 185.  "There is no burden to prove reliance on an omission."  *WorldCom*, 219 F.R.D. at 298. Rather, once the plaintiff establishes the materiality of an omission, the "defendant must prove that even if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different from what it was."  *Fogarazzo II*, 2009 WL 2390244, at *5 (*quoting DuPont v. Brady*, 828 F.2d 75, 78 (2d Cir. 1987)).

Plaintiffs have alleged numerous material omissions in the Complaint.  ¶57.  This Court has already held that Sadia's failure to reveal that it had entered into currency hedging contracts in violation of its internal hedging policy is sufficient to state a Rule 10b-5 claim.  Opinion and Order of July 29, 2009, at 25 (Dkt. #38).  While Plaintiffs also allege material misrepresentations related to the material omissions, even "where plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption."  *Fogarazzo I*, 232 F.R.D. at 186; *see also Parmalat*, 2008 WL 3895539, at *8 ("[The *Affiliated Ute* presumption] does apply where the alleged omissions played an independent, or at least interdependent, role in the alleged fraud.").  Accordingly, because the *Affiliated Ute* presumption of reliance applies to all of Sadia's ADRs, the reliance issue poses no barrier to class certification.

### ii.        *Loss Causation*

Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir.

2005).  Loss causation "can be established either where . . . the market reacted negatively to a corrective disclosure or . . . the materialization of the risks that were concealed by the alleged misrepresentations or omissions proximately caused plaintiffs' loss."  *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 281 (S.D.N.Y. 2008).  However, at the class certification stage, "[p]laintiffs need not show definitively that they will be able to demonstrate loss causation; rather, they must demonstrate that the element of loss causation may be proven class-wide, which may be shown by proposing a suitable methodology."  *Fogarazzo II*, 2009 WL 2390244, at *11.

One way of satisfying this requirement is to submit an expert report suggesting a methodology for determining such a link.  *See Lapin*, 254 F.R.D. at 186.  Such a methodology for determining loss causation is set forth and detailed in the accompanying Vellrath Report.  It is important to note, however, that "a 'battle of the experts' is not appropriate at the class certification stage, as the relevant question is only whether Plaintiff's expert's methodology will apply to the entire class."  *Id.* (*citing Hnot v. Willis Group Holdings Ltd.*, 241 F.R.D. 204, 210 (S.D.N.Y. 2007)).  The *Lapin* court explains:

> [A] district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement.. . ."  Indeed, by asking the Court to decide which expert report is more credible, defendants are requesting that the Court look beyond the Rule 23 requirements and decide the issue on the merits, a practice *In re IPO* specifically cautions against.

*Lapin*, 254 F.R.D. at 186.

### iii.    *Damages*

While "each class member's calculation of damages is an individualized inquiry, courts have held that so long as a formula for calculating damages is proposed, the fact that damages must be calculated on an individual basis is no impediment to class certification."  *Fogarazzo II*, 2009 WL 2390244, at *12; *see also Fears v. Wilhelmina Model Agency, Inc.*, No. 02-cv-4911

17

(HB), 2003 WL 21659373, at *5 (S.D.N.Y. Jul. 15, 2003) ("[I]t is settled in this Circuit that factual differences in the *amount of damages,* date, size or manner of [payment], . . . and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class.") (emphasis original).

While Plaintiffs have not yet put forth a specific formula for calculating damages, based on the information and analysis in the Vellrath Report, a class member's damages can be easily calculated.  This is sufficient at the class certification stage.  *See Fogarazzo II*, 2009 WL 2390244, at *13 ("Although plaintiffs do not put forth a specific formula for calculating damages, based on the information provided by [their expert] regarding the price impact certain [*sic*] analyst reports, a class member's damages can easily be calculated by determining when she purchased and sold shares.").

### 2.    A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Rule 23(b)(3) also requires a court to determine whether a class action is superior to other methods of adjudication.  "In general, securities suits such as this easily satisfy the superiority requirement of Rule 23."  *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 120 (S.D.N.Y. 2008).  In determining whether the superiority requirement is met, Rule 23(b)(3) provides that the following factors should be considered:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

18

Fed. R. Civ. P. 23(b)(3)(A)-(D).  Each of the of the foregoing factors weighs strongly in favor of class certification of this action.

First, a class action is the only economically feasible method of adjudication where those who have been injured are in a poor position to seek legal redress, either because of a lack of sufficient information, or the disproportionate expense of pursuing individual claims.  *See Wagner*, 251 F.R.D. at 120 ("Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims.").

Second, while Sadia's Brazilian shareholders have voted to file a claim against Defendant Ferreira in Brazil,[9] Plaintiffs are aware of no other actions pending against Sadia in U.S. Courts relating to the specific wrongs alleged in the Complaint.  Furthermore, this Court has already appointed Lead Plaintiffs and denied Defendants' motion to dismiss the Complaint, and discovery has been ongoing for approximately six weeks.

Third, it is desirable to concentrate the litigation in this forum.  Sadia's ADRs were listed and traded in this District, and litigation arising out of Sadia's misrepresentations and omissions has been ongoing before this Court for over a year.

Fourth, there is no reason to expect any difficulties in the management of this action as a class action.  Plaintiffs' counsel and the Court have handled numerous similar actions, and the appropriate procedures and techniques for the management of such actions are well-established.  Accordingly, a class action is the superior method of adjudication.

---

[9] On April 6, 2009, Sadia filed a Form 6-K with the SEC, in which it disclosed that at an extraordinary general meeting of shareholders in Concórdia on April 6, Sadia's Brazilian shareholders voted to file a "liability action" against Defendant Adriano Lima Ferreira, pursuant to Article 159 of Law 6404/76 (Corporation Law).

19

**D.    THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Plaintiffs respectfully request that the Court appoint Plaintiffs' counsel, Saxena White and Barroway Topaz, as Class Counsel. In appointing class counsel, the court "must consider" the following:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Saxena White and Barroway Topaz are well qualified to prosecute this case on behalf of Plaintiffs and the other members of the Class. The attorneys of Saxena White and Barroway Topaz have extensive experience in securities litigations and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Jones Decl, Exs. H, I. They have already undertaken a vigorous prosecution of this action, including conducting an investigation of the claims, filing an amended complaint, defeating a motion to dismiss, obtaining an audit report prepared by a Brazilian auditor without the benefit of formal discovery, translating thousands of pages of documents from Portuguese into English, embarking on a multi-year process to serve each of the Individual Defendants in Brazil pursuant to the Inter-American Service Treaty, developing a detailed plan for the prosecution of the case, engaging in discovery, and pursuing class certification. Additionally, Rule 23(g)(1)(B) provides that the court "may consider any other matter pertinent to counsel's ability to fairly and adequately

20

represent the interests of the class." This Court appointed Saxena White and Barroway Topaz as Co-Lead Counsel. Order of January 26, 2009 (Dkt. #12). Accordingly, Saxena White and Barroway Topaz fulfill the requirements of Rule 23(g) and should be appointed Class Counsel.

## IV.    **CONCLUSION**

As demonstrated above, this action satisfies all the requirements of Rules 23(a) and (b)(3), and Plaintiffs' counsel satisfy the requirements of Rule 23(g). Accordingly, Plaintiffs respectfully request that the Court issue an Order: (1) certifying this action pursuant to Rule 23 as a class action and certifying the Class as defined herein; (2) appointing Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Alan Hyman, Phil Carey, Steve Geist and Peter Schicker as Class Representatives; and (3) approving Class Representatives' selection of Saxena White P.A. and Barroway Topaz Kessler Meltzer & Check, LLP as Class Counsel.

Dated:  December 14, 2009                    Respectfully submitted,

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

*/s/ Curtis V. Trinko*
Curtis V. Trinko (CT-1838)
Wai K. Chan (WC-0743)
16 West 46th Street, 7th Floor
New York, NY 10036
Tel:  (212) 490-9550
Fax:  (212) 986-0158
Email:  Ctrinko@trinko.com

*Local Counsel for Plaintiffs*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White III
Christopher S. Jones (CJ-4131)
Lester R. Hooker
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel:  (561) 394-3399
Fax:  (561) 394-3082

**BARROWAY TOPAZ KESSLER MELTZER**
  **& CHECK, LLP**
Stuart L. Berman
Christopher L. Nelson
John J. Gross
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7075

*Co-Lead Counsel for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the December 14, 2009, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing

to all registered users.


                                        */s/ Curtis V. Trinko*
                                        Curtis V. Trinko

23