# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re SADIA S.A. SECURITIES LITIGATION | Case No. 1:08-CV-09528 (SAS)<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION FOR CLASS CERTIFICATION

## I.    __INTRODUCTION__

In its Memorandum of Law in Opposition (the "Opposition" or "Opp.") to Plaintiffs'

Motion for Class Certification (the "Motion" or "Mot."), Sadia contends: (i) that Plaintiffs will

be unable to demonstrate transaction causation and loss causation on a class-wide basis (thus

defeating Rule 23's predominance and typicality prongs) because no accepted methodology for

so doing exists; and (ii) that plaintiffs Alan Hyman and Westchester Putnam Counties Heavy &

Highway Laborers Local 60 ("Local 60") lack sufficient knowledge of, and involvement in, the

action.  *Id*.  *See* Opp. at 1-2.  Sadia's arguments have no merit.

As set forth below, and in the Expert Report of Marc Vellrath, PhD (the "Initial Report"),

as well as Dr. Vellrath's Surrebuttal Report (the "Surrebuttal Report")[1], the causation theories

Plaintiffs advance are widely-accepted in the scientific community and well-supported in the

relevant academic literature (including studies ***produced by*** Sadia's expert) and therefore

represent "a suitable methodology" by which causation may be established on a class-wide basis.

*Fogarazzo v. Lehman Bros., Inc.* (*Fogarazzo II*), 263 F.R.D. 90, 106-107 (S.D.N.Y. 2009).

Further illustrating that the Class should be certified to prosecute the clear and egregious

fraud committed by Sadia and its executives, four individuals and one institution have stepped

forward as proposed class representatives, all of whom receive no personal benefit for their

service.  Each has shown their unwavering commitment to this action by travelling long

distances, revealing personal information, providing financial documents, and enduring hours of

grueling questioning.  At the end of the day, each of them has shown that they know the facts,

---

[1] A copy of the Surrebuttal Report is attached as Exh. 1 to the Declaration of John J. Gross in Support of Plaintiffs' Reply Brief In Further Support of the Motion For Class Certification (the "Gross Decl.").

know their duties, and that they stand at the ready to recover what is rightfully due to the proposed Class.  The Motion should be granted in all respects.

## II.    ARGUMENT

### A.    Plaintiffs Establish Transaction Causation

In securities fraud class actions, transaction causation is presumed on a class-wide basis under two different theories: (i) the fraud-on-the-market theory; and (ii) the *Affiliated Ute* omissions theory.  *See* Plaintiffs' Memo In Support of Motion at 14-16.  Sadia does not dispute this; instead, it argues that Plaintiffs fail to demonstrate artificial inflation in the price of Sadia's ADRs, which precludes application of the foregoing theories, and thus certification of the Class. Opp. at 6-7.  The report of Sadia's expert, Dr. Rene M. Stulz (the "Stulz Report") forms the core of Defendant's arguments.  In it, Dr. Stulz makes two key, and fatally flawed, contentions.

First, Dr. Stulz contends that there is "no recognized scientific method that could be used to support [an] estimate of the amount of inflation allegedly incorporated in the stock price throughout the purported class period."  Stulz Report at ¶ 9.  As shown below, this is simply not true: a scientific methodology for so doing exists, is roundly endorsed by Dr. Stulz' peers, and has been applied by Dr. Vellrath.

Second, Dr. Stulz hypothesizes that the price of Sadia ADRs ***could not have been*** artificially inflated during the Class Period because ***if Sadia had*** unwound the indisputably violative currency contracts ***earlier than it actually did***, then Sadia likely ***would have*** made money on its bets.  Stulz Report at ¶ 38.  Dr. Stulz' exercise in speculation and the subjunctive has no place in scientific testimony, and is nothing more than an exposure of the critical flaws in Sadia's arguments, and the desperate nature of a Defendant that will stop at nothing to avoid accountability for the massive fraud it committed.

1. ***Dr. Stulz's Claim That There Is No Scientific Method
to Support Dr. Vellrath's Inflation Model is Completely False***

Dr. Vellrath demonstrates that Sadia's ADR price was artificially inflated throughout the Class Period because it incorporated (unbeknownst to the market, unwarranted) value due to the presumed credibility and the reputational value of Sadia and its management. *See, e.g.,* Initial Report at ¶ 62. Rather than critique or meaningfully engage Dr. Vellrath, Dr. Stulz simply insists that Dr. Vellrath's position lacks any basis in science. Stulz Report at ¶ 9; *see also* Deposition Transcript of Rene Stulz, PhD, Apr. 30, 2010, 16:1-17:3, 22:20-23:22, 136:13-137:19; 138:7-14; 139:14-140:3 (same) attached to the Gross Decl. as Exh. 2; Opp. at 16. Dr. Stulz and Sadia are simply wrong.

As more fully discussed in the Surrebuttal Report (¶¶ 19-28), Dr. Vellrath's proof that the price of Sadia's ADRs contained a reputational component of artificial inflation is scientifically-grounded and well-accepted in the world of finance and economics. For example, the methodology that Dr. Vellrath used here is expressly endorsed in numerous scholarly papers (attached to the Gross Decl. as Exhs. 3-5), including:

- "Reputational Risk and Conflicts of Interest in Banking and Finance: The Evidence So Far," Stern School of Business, New York University;

- "Quantifying Reputational Effects for Publically Traded Financial Institutions," University of Cagliari; and

- "US Financial Institutions: Reputational Risk and Senior Management Sell Decisions," Univerista di Siena.

More telling, however, is the fact that ***Dr. Vellrath's theory is expressly supported by the very papers that Dr. Stulz produced***, (attached to the Gross Decl. as Exhs. 6-7) including:

- "The Cost to Firms of Cooking the Books," University of Washington, SADIA-00006511-6559; and

- "Measuring Reputational Risk: The Market Reaction to Operational Loss Announcements," Federal Reserve Bank of Boston, SADIA-00006598-6631.

As such, Dr. Stulz's criticism of Dr. Vellrath is unsustainable, and Sadia's arguments along this vein must therefore be rejected. Plaintiffs have proffered "a suitable methodology" to show transaction causation. *Fogarazzo II,* 263 F.R.D. at 107. Nothing more is required.

### 2. *Whether Sadia's Currency Contracts Would Have Made Money If Unwound Is Irrelevant*

Dr. Stulz maintains (and Sadia argues) that the price of Sadia's ADRs was not artificially inflated during most of the Class Period because the improper currency contracts at issue had a positive cash value until September 5, 2008. Opp. at 8-10; *See* Stulz Report at ¶ 38. Again, Dr. Stulz and Sadia are wrong.

First, Sadia's position is predicated on a flawed premise: that this Court may resolve, in Sadia's favor, disputed questions of fact, *i.e.*, whether the contracts were in the money, by how much, and the financial impact of unwinding those contracts during the Class Period. *See, e.g., Casale v. Kelly,* 257 F.R.D. 396, 414 n.126 (S.D.N.Y. 2009) (questions of fact not properly before the court on a motion for class certification). Sadia's argument thus fails on its face as impermissible and premature.

Second, in making this argument, Sadia necessarily ignores a substantial portion of Plaintiffs' case. As this Court recognized, Plaintiffs allege not only that Sadia made actionable statements and omissions concerning Sadia's financial exposure under its currency hedging contracts, ***but also*** that it made actionably false statements and omissions concerning compliance with its own internal hedging policy. *See In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 528-531 (S.D.N.Y. 2009). In his Initial Report, Dr. Vellrath demonstrates that these actionable statements and omissions artificially inflated Sadia's ADR price by portraying the Company as a

reputable, trustworthy organization (*see, e.g.,* Initial Report at ¶ 62), and that, when the truth was revealed at the end of the Class Period, the price of the Company's ADRs plummeted in response. *Id.*; *see also infra* at Sec. II.B.  In other words, Sadia's perceived credibility during the Class Period served artificially to inflate the price of its ADRs throughout the Class Period.  Dr. Vellrath's proposition – that the market would react negatively to a disclosure that the Company had violated its own internal controls and policies over currency contracting, even if those contracts generated a financially positive result – is well-founded in the literature of the finance community.  *See* Surrebuttal Report at 19-28.[2]  Accordingly, Sadia's argument necessarily fails, the class-wide presumption of reliance applies, and Rule 23's "predominance" element is satisfied.

### B.  Plaintiffs Establish Loss Causation

Sadia contends that Plaintiffs are unable to demonstrate loss causation for two reasons. *See* Opp. at 14-16.  ***First***, Sadia claims that Plaintiffs' theory of loss causation, as explained by Dr. Vellrath, is "not grounded in any recognized economic principles. . . ."  This argument can be rejected outright for the reasons set forth *supra* at II.A.1. and in the Surrebuttal Report. ***Second***, Sadia claims that loss causation is not established because Dr. Vellrath's opinion

---

[2] The Stulz Report does not address this issue; it simply denies its existence.  *See* Stulz Report at ¶ 52.  Nevertheless, Stulz advanced a similar, though not identical, position during his deposition, when he stated that: "[In July, 2008, for example] we know that the contracts had a positive value, so it's very -- I don't see how you could reach a conclusion that the market would have lost a lot of value on that day for Sadia."  *See* Exh. 2, Stulz Dep. at 126:13-20.  Inherent in Dr. Stulz' position, of course, is the proposition that some, though in his words, not "a lot of value" could have been lost as a result of a disclosure that the Company made money on contracts that were entered into in violation of its internal policies.  And Dr. Stulz' work on valuation has been discredited by courts in other cases.  *In re TOUSA, Inc.* 422 B.R. 783, 826 (S.D. Fla. Bankr. 2009) ("[Stulz's] criticisms, however, are almost entirely theoretical and there is no evidence that they actually undermine the applicability and reliability of [the opposing expert's] calculations.")

"ignores other obvious causes of 'collateral damage' to Sadia's ADRs on September 26, 2008":
namely, resultant increased financing costs; a disclosed loss concerning offshore assets; and a
particularly troubled time for capital markets. *Id*. at 14-16. [3] Of note, Dr. Stulz admitted during
his deposition that he does not opine on the issue of loss causation, stating that "I don't think the
term loss causation is in my report." Exh. 2, Stulz Dep. at 20:24-21:3.

In contrast, and consistent with generally accepted practices of economic experts
testifying in securities fraud cases, Dr. Vellrath prepared an event study: (i) establishing that
Sadia's disclosures on September 25-26, 2008 caused a massive decline in the price of Sadia
ADRs; and (ii) determining that there was daily inflation in the price of Sadia's ADRs due to
Defendant's fraud (and the amount thereof). *See, e.g.,* Initial Report at ¶¶ 51-53; 61-62. This is
textbook procedure, and suffices to demonstrate loss causation at this stage of the litigation.
*Fogarazzo II*, 263 F.R.D. at 106-107 (event study endorsed as method to demonstrate loss
causation).

Indeed, Dr. Stulz did not perform an event study. Exh. 2, Stulz Dep. at 68:11-12. Nor
does he (or Sadia) question the statistical outputs of Dr. Vellrath's event study. *Id.* at 69:10-12.
Instead, they quibble with the minutia of Dr. Vellrath's interpretation of his study. Specifically,
Sadia claims that Dr. Vellrath's computation excluded increased financing costs resulting from
the disclosures. This is true, because ***that is what the academic literature (that Sadia and Dr.***

---

[3] Dr. Stulz and Sadia imply that in order to show loss causation, one must quantify the exact
amount of inflation, *i.e.*, quantify damages. *See* Opp. at 18. But this is not required at the class
certification stage. *See Fogarazzo II*, 263 F.R.D. at 109 (While "each class member's
calculation of damages is an individualized inquiry, courts have held that so long as a formula
for calculating damages is proposed, the fact that damages must be calculated on an individual
basis is no impediment to class certification."); *Schleicher v. Wendt*, 2009 U.S. Dist. LEXIS
24810 at **37-38 (S.D. Ind. Mar. 20, 2009) (certifying class and recognizing that damages are
jury question); *In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1343 (N.D. Ga.
2007) (certifying class and reserving question of damages).

***Stulz* contend does not exist) *compels*.** *See, e.g.,* Surrebuttal Report at ¶¶ 24-25 ("increased

financing costs . . . arising from the event are not deducted from loss in market capitalization --

i.e. reputation losses include higher financing costs.") (citation omitted). Sadia also complains

that Dr. Vellrath's report fails to account for a disclosed loss concerning offshore assets. Stulz

Report at ¶ 50. This event was excluded as statistically insignificant (as evidenced by the lack of

any analyst coverage); a fact that Sadia would have known had it constructed its own event

study, or fully reviewed Stulz' event study. Initial Report at Exh. V-B. Finally, Sadia complains

that Dr. Vellrath's analysis ignores that it was a particularly troubled time for capital markets.

This is false. In his event study, Dr. Vellrath controlled for this very issue using major stock and

bond index returns. Surrebuttal Report at ¶¶ 29-31. Accordingly, loss causation has been

sufficiently established for the purposes of a motion for class certification.

### C.    Plaintiffs Are Adequate Representatives and Their Claims Are Typical of the Proposed Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." Generally, "adequacy of representation entails inquiry as to whether:

1) plaintiff's interests are antagonistic to the interests of other members of the class and 2)

plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Fogarazzo II*,

263 F.R.D. at 97. Here, these elements are satisfied. Each plaintiff (i) has shown that he is

knowledgeable of the details of the action; (ii) is dedicated to pursuing the claims to fruition; (iii)

has been deposed and given testimony demonstrating his adequacy; (iv) has diligently and timely

responded to lengthy and detailed discovery requests; and (v) is represented by counsel that is

qualified, experienced and able to conduct the litigation.[4] Nothing more is required.

---

[4] *See,* Gross Decl. at Exh. 8 for a brief biographical summary of each plaintiff.

Defendant tacitly recognizes as much, and confines the majority of its arguments to unsustainable personal and individual attacks on Plaintiffs Local 60 and Hyman.[5]  *See* Opp. at 20-25.  But this, too, is improper and unsustainable.  *See Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 118 (S.D.N.Y. 2008) ("Defendants do not appear to have provided probative evidence that there are antagonistic interests between the proposed class representatives and other class members, or that Plaintiffs' counsel are unqualified, and instead rely on attack[ing] the . . . intelligence of the [proposed class representatives].") (appointing class representatives).[6]

---

[5] Defendant offers no arguments directed at plaintiff Geist.  This is not surprising.  Geist understands class actions, his duties as a representative plaintiff, the facts of the instant case, and the fraud in which Sadia engaged.  *See* Gross Decl., Exh. 9, Deposition of Steven Geist at 9:12 to 10:14, 40:15-22, 58:11-24, and 11:7 to 14:2.  Nor does Sadia contend that plaintiffs Carey or Schicker are *personally* inadequate under Rule 23(a)(4).  Again, this is not surprising, Carey (*see* Gross Decl., Exh. 10, Deposition of Phillip Carey at 66:14-25, 105:13 to 108:5, 9:17-25, 113:13 to 114:4, 120:10-22, and 119:12-24) and Schicker (*see* Gross Decl., Exh. 11, Deposition of Peter Schicker at 38:12-21, 104:18 to 105:15, 83:14 to 84:7, 79:8-10, 98:23 to 99:11, and 98:9-22) both clearly understand the case, Sadia's fraud, and their duties as representative plaintiffs; *see also* Opening Br. at 11-12. Dkt. #47.  Instead of addressing as much, Sadia argues that Carey and Schicker suffered no damages attributable to Sadia's fraud because they purchased Sadia ADRs prior to September 5, 2008.  Opp. at 20.  Sadia contends that this subjects Carey and Schicker to unique defenses that render them atypical.  *Id.*  As shown, *supra* at n.3, such arguments are baseless, delve too far into the merits at the class certification stage, and improperly demand that the Court resolve – as a matter of law – disputed issues of fact that are expressly reserved for the jury.  Further, Sadia's argument that Carey and Schicker are subject to unique defenses due to the timing of their purchases fails for an additional reason: even if Sadia's defense that no damages incur for shares purchased prior to September 5, 2008 were correct or resolvable at this stage, such a defense would necessarily be common to *everyone* who purchased shares of Sadia ADRs prior to that date, obviating any argument of atypical or unique defenses.

[6] Indeed, the U .S. Supreme Court has "expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-374 (1966)); *Fogarazzo II*, 263 F.R.D. at 97 (same).  In "complex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected."  *Fogarazzo v. Lehman Bros., Inc.* (*Fogarazzo I*), 232 F.R.D. 176, 181 (S.D.N.Y. 2005).  A proposed class representative "will be found inadequate due to ignorance only when they 'have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the

In particular, Sadia argues that Local 60 is inadequate because its deposition designee, Richard Berardo ("Berardo"), could not recall each and every vagary of the case on which Sadia's attorneys quizzed him. Opp. at 22. But Sadia misportrays the record, and ignores that the adequacy of a class representative does not turn on memory games; individuals are expressly permitted to rely on the knowledge and expertise of their counsel. *See, e.g., Fogarazzo I* at 181. Indeed, a representative is required only to have a basic awareness of the facts of the case, and to express a willingness to satisfy his obligations to absent class members. *See Wagner,* 251 F.R.D. at 118. Berardo far exceeds this standard. *See* Gross Decl., Exh. 12, Deposition of Richard Berardo at 81:18 to 82:14 (setting forth a thorough understanding of the gravamen of the case, his understanding of the esoteric nature of ADRs and currency derivative hedges, and Sadia's fraudulent (and concealed) gambling in the currency markets). Berardo's simple yet revealing explanation of the basis for Defendant's liability fits squarely within *Baffa*'s emphasis that the "knowledge" requirement for class representatives should be applied "with a view toward typicality concerns,"[7] and not with "a myopic view." *Baffa*, 222 F.3d at 61. That is, Mr. Berardo possesses a demonstrated understanding that Local 60's claims—as well as the claims of all other class members—"arise from the same practice or course of conduct," (*Vivendi*, 242 F.R.D. at 85), namely, Defendant's lies and omissions about the nature and extent of Sadia's

---

attorneys.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) (*quoting Baffa*, 222 F.3d at 61). Indeed, "[i]t is sufficient if the class representatives are aware of the basic facts underlying the lawsuit and . . . not . . . likely to abdicate his obligations to fellow class members." *Wagner*, 251 F.R.D. at 118 (alterations original).

[7] As "courts have observed, the issues of typicality and adequacy tend to merge because they "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (*quoting General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

currency hedges.[8]  Mr. Berardo also has prior experience testifying in court (Gross Decl. Exh.

12, Berardo Dep. at 44:25 to 46:15), which shows his "familiarity with the legal system."  *Noble*

*v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 344 (S.D.N.Y. 2004).  He knows what a class

representative is, understands what it means to undertake a fiduciary duty, described the

differences between a class action and an individual action, and explained that Local 60 "is

involved in a class action."  *See* Gross Decl. Exh. 12, Berardo Dep. at 83:12-17. 92:3-10. 99:11-

19. 99:24-25.  Mr. Berardo's testimony more than demonstrates Local 60's satisfaction of Rule

23(a)(4)'s requirements; Local 60 should be certified as a class representative.[9]

## III.   CONCLUSION

Accordingly, Plaintiffs respectfully submit that the Motion should be granted in all

respects.

---

[8] Defendant's reliance on *Koss v. Wackenhut Corp.*, No. 03-cv-7679(SCR), 2009 U.S. Dist. LEXIS 34846 (S.D.N.Y. Mar. 30, 2009) (Opp. at 23) is entirely misplaced.  In *Koss*, certain of the proposed class members failed to appear for both originally-scheduled *and* re-scheduled depositions, and further failed to respond to "numerous" discovery requests.  *Id.* at *8.  Mr. Berardo was deposed as scheduled, and Local 60 responded to all of Defendant's discovery requests in a timely manner.

[9] Defendant raises similar arguments against Hyman, suggesting that he has no idea what this case is about, or even that it is a class action.  Opp. at 21-22.  This is simply not so.  Mr. Hyman testified that he brought a class action suit against Sadia.  Gross Decl., Exh. 13, Deposition of Alan Hyman at 128:10-12.  He explained what an ADR is (*Id.* at 50:11-25), and despite no background or training in currency trading, he succinctly described the basic nature of currency hedges and how Sadia fraudulently used them not as represented to the public (as hedges), but as wild gambles.  *Id.* at 123:8-18  Similar to Mr. Berardo, Hyman's explanation of the bases for Defendant's liability fit squarely within *Baffa*'s emphasis that the "knowledge" requirement for class representatives should be applied "with a view toward typicality concerns."  *Baffa*, 222 F.3d at 61.  As he is permitted to do, Mr. Hyman relied on counsel to conduct investigations and state the causes of action in the complaint. *Id.* at 114:9-13; 124:6-9.  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. 2006) ("Plaintiffs are entitled to rely on the expertise of counsel . . . .").  Accordingly, Mr. Hyman should be certified as a class representative.

Dated:  May 6, 2010                    Respectfully submitted,

                                       **LAW OFFICES OF CURTIS V. TRINKO, LLP**

                                       */s/ Curtis V. Trinko*
                                       Curtis V. Trinko (CT-1838)
                                       16 West 46th Street, 7th Floor
                                       New York, NY 10036
                                       Tel:  (212) 490-9550
                                       Fax:  (212) 986-0158
                                       Email:  Ctrinko@trinko.com

                                       *Local Counsel for Plaintiffs*

                                       **SAXENA WHITE P.A.**
                                       Maya Saxena
                                       Joseph E. White III
                                       Christopher S. Jones (CJ-4131)
                                       Lester R. Hooker
                                       2424 North Federal Highway
                                       Suite 257
                                       Boca Raton, FL 33431
                                       Tel:  (561) 394-3399
                                       Fax:  (561) 394-3082

                                       **BARROWAY TOPAZ KESSLER MELTZER
                                         & CHECK, LLP**
                                       Stuart L. Berman
                                       Christopher L. Nelson
                                       John J. Gross
                                       280 King of Prussia Road
                                       Radnor, PA 19087
                                       Tel:  (610) 667-7706
                                       Fax:  (610) 667-7075

                                       *Co-Lead Counsel for Plaintiffs*